CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 0 6 2016

JULIA C. DUDLEY, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| BIANCA JOHNSON and DELMAR CANADA, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 3:16CV00016 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| ANDREW HOLMES, JOHN DOES 1-3, and ALBEMARLE COUNTY, | ) ) ) | By: Hon. Glen E. Conrad Chief United States District Judge |
| Defendants. | ) ) | |

Bianca Johnson and Delmar Canada filed this civil rights action under 42 U.S.C. § 1983 against Andrew Holmes, a police officer employed by the Albemarle County Police Department; three unknown police officers; and Albemarle County ("the County"). Holmes and the County have moved to dismiss the plaintiffs' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Holmes' motion will be granted in part and denied in part, and the County's motion will be denied.

## Factual Background

The following facts, taken from the plaintiffs' amended complaint, are accepted as true for purposes of the defendants' motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Johnson and Canada are African-American. The couple resides in an apartment in Albemarle County, Virginia.

On April 26, 2014, Holmes, who is Caucasian, executed a traffic stop of Canada's vehicle, and issued him a summons for driving on a suspended license. The following day, Holmes sought and obtained a warrant to search the plaintiffs' apartment for the suspension notification form

issued by the Virginia Department of Motor Vehicles ("DMV").  Prior to seeking the warrant,

Holmes verified with the DMV that Canada's license had been suspended in March of 2013, and

that a suspension notice had been sent by the DMV.

Holmes included this information in an affidavit submitted in support of the search

warrant.  In the affidavit, Holmes stated as follows:

> Delmar Gene Canada was operating a motor vehicle on Greenbrier Drive in Albemarle County on April 26, 2014.  Canada's privilege to drive was suspended on March 28, 2013 for violation of code § 46.2-320(B).  Officer Holmes stopped Canada and issued Canada a summons in violation of code 46.2-301, driving while suspended.  Canada acknowledged his address to be 141 Green Turtle Lane apartment 6 Charlottesville, VA 22901 which was confirmed by DMV records.  A DMV driver's transcript indicated that Canada changed his address to 141 Green Turtle Lane apartment 6 Charlottesville, VA 22901 on January 31, 2013, prior to the suspension.  DMV records also indicate that a suspension notification was mailed 1st class to Canada at this address.

Pls.' Br. in Opp'n to Holmes' Mot. to Dismiss Ex. 1.  Holmes also indicated that he had been

employed by the Albemarle County Police Department for over nine years, and that he was aware

from his training and experience "that individuals keep, store, and maintain motor vehicle

documentation and suspension notification forms in their possessions, residences, surrounding

curtilage, and inside of vehicles."  Id.

On the afternoon of April 27, 2014, an Albemarle County magistrate issued a search

warrant that directed officers to "forthwith search" the plaintiffs' apartment, "either in day or

night," for the "Department of Motor Vehicle suspension notification form for Delmar Gene

Canada."  Id.  The warrant indicated that it was issued in relation to the offense of "[o]perating a

motor vehicle on the public roadways of the Commonwealth while license or privilege to drive has

been suspended in violation of Virginia code 46.2-301."  Id.

2

Holmes and three unknown police officers executed the search warrant around midnight on May 2, 2014. They searched the apartment for approximately two hours and were ultimately unable to locate the DMV notification form. While the search was conducted, the plaintiffs were prohibited from leaving the apartment or moving within the apartment without permission.

The plaintiffs allege that Holmes "has a history and practice of targeting African-American males for vehicle stops and intrusive searches," and that "[t]he application for a search warrant in this case and the search itself were motivated, in significant part, by the [the plaintiffs'] race." Am. Compl. ¶ 19. Prior to the search at issue in this case, "[n]umerous complaints" had been lodged by African-American citizens of Albemarle County regarding Holmes' conduct in "improperly stopping cars and unlawfully searching people and places." Id. ¶ 20. The plaintiffs allege that no disciplinary or other corrective action was taken as a result of any of those complaints.

**Procedural History**

In February of 2016, Johnson and Canada filed suit against Holmes in the Circuit Court of Albemarle County. Holmes removed the case to this court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

On April 8, 2016, the plaintiffs filed an amended complaint against Holmes, three unknown police officers, and the County. The amended complaint asserts causes of action under 42 U.S.C. § 1983. In Count I, the plaintiffs claim that Holmes "violated [their] rights protected by the Fourth and Fourteenth Amendment to the United States Constitution to be free from unreasonable searches." Id. ¶ 22. In Count II, the plaintiffs claim that Holmes "violated [their] rights protected by the Fourth and Fourteenth Amendments . . . to be free from unreasonable seizures." Id. ¶ 26. In Count III, the plaintiffs claim that the conduct described in the complaint

3

"violated [their] right to equal protection of the law as guaranteed by the Fourteenth Amendment." Id. ¶ 28.

Holmes and the County have moved to dismiss the amended complaint pursuant to Rule 12(b)(6). The court held a hearing on the motions on June 20, 2016.[1] The motions have been fully briefed and are ripe for review.

## Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the plaintiffs' complaint, which must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); see also Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006). When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiffs' favor. Erickson, 551 U.S. at 94; see also Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

---

[1] During the hearing, the court also heard oral argument on motions to dismiss filed in two other civil rights actions against Holmes and the County. Those motions will be addressed in separate memorandum opinions.

4

Johnson and Canada filed suit against the defendants pursuant to 42 U.S.C. § 1983, which imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. As previously stated, the plaintiffs claim that their residence was unlawfully searched, that they were unlawfully seized during the course of the search, and they were denied equal protection.

## I.     Holmes' Motion to Dismiss

Holmes has moved to dismiss all three counts asserted in the amended complaint. Holmes argues that the doctrine of qualified immunity bars the plaintiffs' unlawful search and seizure claims, and that the allegations in the amended complaint fail to support a plausible equal protection claim. The court will address each argument in turn.

### A.     Qualified Immunity

The doctrine of qualified immunity "protects government officials from civil damages in a § 1983 action 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The purpose of qualified immunity is to protect government officials "from undue interference with their duties and from potentially disabling threats of liability." Harlow, 457 U.S. at 806. The doctrine "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-step sequence for determining a defendant's entitlement to qualified immunity. "First, a court must

decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier, 533 U.S. at 201). More recently, the Supreme Court has held that the two-step progression is not required, and that courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Id. at 236; see also Williams v. Ozmint, 716 F.3d 801, 805 (4th Cir. 2013) (observing that "a court is not required to consider the . . . two steps [of the qualified immunity inquiry] in any particular order").

In the present case, the court finds it appropriate to determine first whether the plaintiffs have alleged conduct that constitutes a violation of any clearly established right under the Fourth Amendment. "A right is clearly established if the contours of the right are sufficiently clear so that a reasonable officer would have understood, under the circumstances at hand, that his behavior violated the right." Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007). While a case directly on point is not required for a court to conclude that the law was clearly established, "the existing precedent must have placed the statutory or constitutional question" confronted by the officer "beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). This requirement "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier, 533 U.S. at 206.

Having outlined the relevant portion of the qualified immunity analysis, the court turns to the plaintiffs' claims arising from the search of their residence, particularly their claim that they

were subjected to an unreasonable search in violation of the Fourth Amendment.[2]  Although the search was conducted pursuant to a warrant, the plaintiffs allege that the warrant was not supported by probable cause.  The plaintiffs further allege that the execution of the search warrant was unreasonable.

### 1.    Issuance of the Search Warrant

The Fourth Amendment prohibits unreasonable searches and seizures and provides that "no warrant shall issue, but upon probable cause."  U.S. Const. amend. IV.  Probable cause exists when, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).

Although the right to be free from searches not founded upon probable cause was well established prior to the search of the plaintiffs' residence, "defining the applicable right at that level of generality is not proper."  Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996).  For purposes of qualified immunity, the court must undertake a more particularized inquiry, focusing on whether "a reasonable officer could have believed [the search of the plaintiffs' residence] to be lawful, in light of clearly established law and the information [Holmes] possessed."  Anderson v. Creighton, 483 U.S. 635, 641 (1987).

---

[2] The plaintiffs also assert an unlawful seizure claim based on the fact that they were prohibited from leaving their residence, or moving within the residence without permission, while the search warrant was being executed.  It is well-settled that officers may "detain the occupants of the premises while a proper search is conducted."  Michigan v. Summers, 452 U.S. 692, 7005 (1981); see also Muehler v. Mena, 544 U.S. 93, 98 (2005) ("An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.").  Consequently, if Holmes is entitled to qualified immunity on the unlawful search claim, he will also be entitled to qualified immunity for the seizure incident to the execution of the search warrant.

7

Where an alleged Fourth Amendment violation involves a search conducted pursuant to a warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officer[] acted in an objectively reasonable manner . . . ." Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012). Nonetheless, "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search . . . does not end the inquiry into objective reasonableness." Id. Instead, the Supreme Court has "recognized an exception allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). In those instances, such as "where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the "shield of immunity otherwise conferred by the warrant will be lost." Id. (internal citations and quotation marks omitted); see also Graham v. Gagnon, ___ F.3d ___, 2016 U.S. App. LEXIS 13672, at *13 (4th Cir. July 27, 2016) ("Consistent with Malley and Messerschmidt, we have repeatedly held that arrest warrants do not confer immunity if it was objectively unreasonable to conclude that there was probable cause for the arrest."). The Supreme Court's "precedents make clear, however, that the threshold for establishing this exception is a high one[.]" Messerschmidt, 132 S. Ct. at 1245.

In the present case, the plaintiffs contend that their case falls within this narrow exception. According to the plaintiffs, Holmes' affidavit provided "no showing that the evidence sought would aid in convicting Mr. Canada of the traffic offense at issue," or that "there was . . . probable cause to believe that the item sought would be found in the [residence]," and that any reasonable officer would have known that the warrant was invalid. Pl.'s Br. in Opp'n to Holmes' Mot. to Dismiss 3-4. For the following reasons, the court finds the plaintiffs' arguments unpersuasive.

8

With respect to the warrant's authorization to search for the suspension notification form issued by the DMV, the plaintiffs first argue that a reasonable officer would have known that there was no probable cause to believe that the form would aid in convicting Canada of driving on a suspended license. See Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307 (1967) (holding that the Fourth Amendment permits a search for evidence when there is "probable cause . . . to believe that the evidence sought will aid in a particular apprehension or conviction"). Since Holmes' review of DMV records indicated that a suspension notification form had been mailed to Canada's residence, the plaintiffs argue that Holmes should have known that he did not need to find the actual form to prove that Canada was on notice that his license had been suspended.

To convict a driver of driving on a suspended license in violation of Virginia Code § 46.2-301, "the Commonwealth must prove that [the driver] had received actual notice that his license had been suspended." Hodges v. Commonwealth, 771 S.E.2d 693, 695 (Va. Ct. App. 2015) (citing Bibb v. Commonwealth, 183 S.E.2d 732, 733 (Va. 1971)). The plaintiffs are correct that a certificate from the DMV showing that a notice of suspension was sent by certified mail is prima facie evidence that such notice was provided to the driver. See Va. Code § 46.2-416. However, this prima facie showing can be rebutted with evidence that the driver did not receive the notice. See Bibb, 183 S.E.2d at 733 (holding that the Commonwealth could not rely on the statutory presumption since the evidence showed that the defendant did not receive the notice mailed to him by the DMV); see also Pitchford v. Commonwealth, 344 S.E.2d 924, 926 (Va. Ct. App. 1986) (holding that "the jury reasonably could have disregarded appellant's testimony to the extent he sought to rebut the prima facie showing that he received notice of suspension from DMV").

9

Because the Commonwealth must ultimately prove that a driver had received actual notice that his license had been suspended, it would not have been unreasonable for an officer to believe that the suspension notification form that Holmes sought to find at the plaintiffs' residence would aid in prosecuting Canada for driving on a suspended license. Not only would the plaintiffs' possession of such evidence help to establish actual notice of the suspension, it might also prove helpful in impeaching Canada or rebutting any defense that he could raise at trial. Accordingly, to the extent that the plaintiffs claim that Holmes did not have probable cause to believe that the evidence sought would aid in convicting Canada of the driving offense, the court concludes that Holmes is entitled to qualified immunity.

The plaintiffs' second argument – that Holmes' affidavit failed to provide any facts or circumstances from which a magistrate could properly conclude that the suspension notification form would be found at the time of the search – presents an arguably closer question. The United States Court of Appeals for the Fourth Circuit has recognized that "time is a crucial element of probable cause." United States v. McCall, 740 F.2d 1331, 1335-36 (4th Cir. 1984). Accordingly, "[a] valid search warrant may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" Id. (quoting Sgro v. United States, 287 U.S. 206, 210 (1932)). However, whether the facts alleged in support of a warrant meet this test "is not resolved by reference to pat formulas or simple rules." Id. Nor can "[t]he vitality of probable cause . . . be quantified by simply counting the number of days between the occurrence of the fact supplied and the issuance of the affidavit." Id. (internal citation and quotation marks omitted). Instead, one must "look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the

10

nature of the property to be seized." Id. "In some circumstances the very nature of the evidence sought may suggest that probable cause is not diminished solely by the passage of time." Id.

In this case, the plaintiffs emphasize that Canada's privilege to drive was allegedly suspended on March 28, 2013, nearly thirteen months before Holmes obtained a warrant to search the plaintiffs' apartment for the suspension notification form. The plaintiffs argue that Canada did not need to retain the document to remind him that his license was suspended; that it is "absurd to think that the police academy or subsequent training would have provided information about where and for how long individuals keep, store and maintain motor vehicle documentation"; and that, "as a matter of common sense, there would be no reason for [a driver] to keep a notice from DMV for more than a year." Pls.' Resp. to Holmes' Mot. to Dismiss 5.

Although the plaintiffs' arguments are not without force, the court nevertheless concludes that Holmes is entitled to qualified immunity. Even if the magistrate erred in determining that there was probable cause to believe that the form would still be located at the plaintiffs' apartment, the court is unable to conclude that "the magistrate so obviously erred that any reasonable officer would have recognized the error." Messerschmidt, 132 S. Ct. at 1250. The plaintiffs have not directed the court to any case that would have clearly warned Holmes that there was no probable cause to believe that the document from the DMV would be found at the plaintiffs' apartment. On the contrary, the Court of Appeals of Virginia has held that a "magistrate could reasonably conclude that documents relating to ownership or use of a car existed and would be kept with other personal papers in one's residence." Gregory v. Commonwealth, 621 S.E.2d 162, 167 (Va. Ct. App. 2005). Likewise, federal appellate courts have held that other personal documents, such as identification papers and bank records, "are the sort which would normally be kept at one's . . . residence," and "are also the sort which could be reasonably expected to be kept there for long

11

periods of time." United States v. Freeman, 685 F.2d 942, 951-52 (5th Cir. 1982); see also United States v. Farmer, 370 F.3d 435, 440 (4th Cir. 2004) (observing that payment receipts and bank statements are "precisely the type of records that are not ordinarily destroyed or moved about from one place to another") (internal citation and quotation marks omitted); United States v. Comstock, 412 F. App'x 619, 623 (4th Cir. 2011) (noting that "sales receipts, factory warranties, and cancelled checks are items that one would expect a person to retain at home").

Based on the existing caselaw, including the decisions cited above, it would not have been "entirely unreasonable" for an officer to believe that the document pertaining to Holmes' driving status would be found at his residence, notwithstanding the passage of time. Messerschmidt, 132 S. Ct. at 1245. Even if the warrant were defective, "it was not so obviously lacking in probable cause that the officer[] can be considered 'plainly incompetent' for concluding otherwise." Id. at 1250 (quoting Malley, 475 U.S. at 341). Accordingly, Holmes is entitled to qualified immunity on the Fourth Amendment claim arising from the issuance of the search warrant. Id.; see also Malley, 475 U.S. at 341 (explaining that "if officers of reasonable competence could disagree on [the] issue" of whether a warrant should issue, then "immunity should be recognized").

**b.      Execution of the Search Warrant**

The plaintiffs also claim that the execution of the search warrant at midnight violated their Fourth Amendment rights. In response to Holmes' assertion of qualified immunity, the plaintiffs argue that the nighttime execution of the warrant was unreasonable and that Holmes "knew or should have known that." Pls.' Br. in Opp'n to Holmes' Mot. to Dismiss 6. For the following reasons, the court is unable to agree.

The Commonwealth of Virginia's standard warrant form, DC-339, authorizes officers to conduct a search "either in day or night." Id., Ex. 1. The magistrate who issued the warrant did

12

not circle "day," cross out "night," or otherwise indicate that the search warrant had to be executed during a particular part of the day or night. While nighttime, as the plaintiffs observe, is a highly intrusive time, "[t]he Supreme Court . . . . has never held that the Fourth Amendment prohibits nighttime searches." United States v. Rizzi, 434 F.3d 669, 675 (4th Cir. 2006). Moreover, the plaintiffs do not cite, and the court is unable to find, any "clearly established law under the Fourth Amendment that prohibits nighttime execution of a warrant, where, as here, the warrant does not prohibit such a search." Youngbey v. March, 676 F.3d 1114, 1126 (D.C. Cir. 2012). Because it cannot be said that the nighttime search violated a clearly established Fourth Amendment right, Holmes is entitled to qualified immunity.[3]

For these reasons, Holmes' motion to dismiss will be granted with respect to the plaintiffs' claims under the Fourth Amendment.

## II.    Legal Sufficiency of the Plaintiffs' Equal Protection Claim

The plaintiffs also claim that Holmes' search of the plaintiffs' residence was racially motivated and thus violated their rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause prohibits officers from selectively enforcing laws

---

[3] In their brief in opposition to Holmes' motion, the plaintiffs suggest for the first time that the five-day delay between the issuance and execution of the search warrant violated Virginia law, which requires that a warrant be executed "forthwith." Va. Code § 19.2-56. As Holmes notes in his reply, however, state statutory provisions do not alter the contours of the Fourth Amendment. See Virginia v. Moore, 553 U.S. 164, 174 (2008). To the extent the plaintiffs' brief could be construed to assert that the five-day delay rendered the execution of the warrant constitutionally unreasonable, the plaintiffs do not cite to any case that would have put Holmes on notice that the delay violated their Fourth Amendment rights. The court's own review of applicable caselaw reveals that appellate courts, including the Fourth Circuit, have found that similar delays did not affect the validity of a warrant. See, e.g., United States v. Blizzard, 313 F. App'x 620, 621 (4th Cir. 2009) (holding that the district court did not err in denying a motion to suppress that was based on an eight-day delay in executing a warrant); United States v. Martin, 131 F. App'x 954, 955 (4th Cir. 2005) (finding that "the district court properly rejected Martin's staleness argument based on the four-day delay between issuance and execution of the search warrant under the circumstances of [the] case"); United States v. Morrow, 90 F. App'x 183, 184 (8th Cir. 2004) (holding that a "seven-day delay did not render stale the information on which the warrant was based"). Accordingly, Holmes is immune from liability for exercising the warrant five days after it was issued.

13

based on race. Whren v. United States, 517 U.S. 806, 813 (1996)); see also Sow v. Fortville Police Dep't, 636 F.3d 293, 303 (7th Cir. 2011) ("Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause."). "[T]he right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment." Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003); see also United States v. Avery, 137 F.3d 343, 352 (6th Cir. 1997) ("The Equal Protection Clause of the Fourteenth Amendment provides citizens a degree of protection independent of the Fourth Amendment protection against unreasonable searches and seizures.").

"The requirements for a claim of racially selective law enforcement draw on what the Supreme Court has called 'ordinary equal protection standards.'" Marshall, 345 F.3d at 1168 (quoting United States v. Armstrong, 517 U.S. 456, 465 (1996)). The plaintiffs must establish "that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." Id.; see also Cent. Radio Co. Inc. v. City of Norfolk, 811 F.3d 625, 634-35 (4th Cir. 2016); Martin v. Conner, 882 F. Supp. 2d 820, 839 (D. Md. 2012). Although the plaintiffs are not required to show that discrimination was the defendant's "sole motive," they "must allege the requisite discriminatory intent with more than mere conclusory assertions." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (emphasis in original). Thus, to state a valid equal protection claim, the plaintiffs must set forth specific factual allegations that are probative of an improper motive. Id.

Applying these standards, the court concludes that the plaintiffs' amended complaint states a plausible equal protection claim against Holmes. The plaintiffs contend that "[t]he application for a search warrant in this case and the search itself were motivated, in significant part, by the [plaintiffs'] race." Am. Compl. ¶ 19. To support this claim, the plaintiffs allege that Holmes

14

"has a history and practice of targeting African-American males for vehicle stops and intrusive searches." Id. The plaintiffs further allege that this practice existed at time of the search at issue in this case, and that numerous, similar complaints of unlawful treatment had been lodged by other African-American citizens of Albemarle County. Assuming the truth of the plaintiffs' factual allegations, the court concludes that the amended complaint states a plausible selective enforcement claim under the Equal Protection Clause. See Washington v. Davis, 426 U.S. 229, 242 (1976) (explaining that "[a]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [practice] bears more heavily on one race than another"); Marshall, 345 F.3d at 1168 (observing that "a police officer's pattern of traffic stops and arrests . . . may support an inference of discriminatory purpose in this context"). Accordingly, Holmes' motion to dismiss will be denied with respect to this claim.[4]

## II.     Albemarle County's Motion to Dismiss

The plaintiffs also filed suit under § 1983 against the County. While a municipality is subject to suit under § 1983, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978), liability attaches "only where the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (emphasis in original). "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691 (emphasis in original). Instead, a municipality is only liable under § 1983 if it causes the deprivation of a plaintiff's constitutional rights through an official custom, policy, or practice.

---

[4] Holmes properly refrained from asserting qualified immunity with respect to the equal protection claim. See, e.g., Savino v. Town of Southeast, 572 F. App'x 15, 16 (2d Cir. 2014) (emphasizing that "it is beyond peradventure that the right to be free from application of a neutral law, or selective enforcement of a law, because of race or national origin is clearly established") (collecting cases); Herring v. Central State Hosp., No. 3:14-cv-738-JAG, 2015 U.S. Dist. LEXIS 99074, at *10 (E.D. Va. July 29, 2015) (observing that "the right to be free from racial discrimination . . . has been clearly established for decades," and that "[n]o one in their right mind could possibly think that the government can discriminate based on race").

15

Owens v. Balt. City State's Attys. Office, 767 F.3d 379, 402 (4th Cir. 2014); see also Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

In this case, the plaintiffs seek to hold the County liable for the alleged violation of their right to equal protection. In support of their claim, the plaintiffs allege that Holmes had "a history and practice of targeting African-American males for vehicle stops and intrusive searches," and that "[n]umerous complaints by African-Americans [had] been lodged by citizens with the County of Albemarle through its police department, prior to the incident herein, against Defendant Holmes, complaining about his conduct in improperly stopping cars and unlawfully searching people and places." Am. Compl. ¶¶ 19-20. The plaintiffs further allege that "no disciplinary or other corrective action was taken as a result of any of those complaints," and that the County "thereby acquiesc[ed] to Defendant Holmes' illegal behavior and implicitly encourag[ed] his practice of targeting African-Americans." Id. at ¶ 20.

The plaintiffs' complaint thus alleges a theory of custom "by condonation." Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987). "Under this theory of liability, a [municipality] violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" Owens, 767 F.3d at 402. To prevail under this theory, the plaintiffs "must point to a 'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicates that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Id. (quoting Spell, 824 F.2d at 1386-91).

Although prevailing under this theory of liability is "no easy task," Id. at 402, "simply alleging such a claim is, by definition, easier." Id. at 403. To withstand dismissal under Rule 12(b)(6), "a complaint need only allege facts which, if true, 'state a claim to relief that is plausible

16

on its face.'" Id. (quoting Iqbal, 556 U.S. at 678). "The recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." Id. Nor must the plaintiffs "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." Jordan by Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir. 1994). Instead, "[a] plaintiff fails to state a claim only when he offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action." Owens, 767 F.3d at 403 (quoting Iqbal, 556 U.S. at 678).

Applying these principles, the court concludes that the plaintiffs have stated a plausible Monell claim against the County. The plaintiffs allege that Holmes had a history and practice of selectively targeting African-Americans, that the County was aware of this unlawful practice through numerous complaints made by African-American citizens, and that the County effectively sanctioned and endorsed Holmes' treatment of the plaintiffs by failing to take any disciplinary or corrective action. To prevail on this claim, the plaintiffs will bear the "difficult" burden of proving these allegations. Id. At this early stage, however, the allegations are sufficient to survive dismissal under Rule 12(b)(6). See, e.g., Smith v. Aita, No. CCB-14-3487, 2016 U.S. Dist. LEXIS 90029, at *13 (D. Md. July 12, 2016) (holding, at the Rule 12(b)(6) stage, that it was "enough that Smith has alleged that Salisbury was aware of ongoing constitutional violations by Salisbury police officers and did nothing to stop or correct those actions, thereby allowing an unconstitutional pattern to develop"); Garcia v. Montgomery County, Md., No. JFM-12-3592, 2013 U.S. Dist. LEXIS 120659, at *14 (D. Md. Aug. 23, 2013) (holding that the plaintiff stated a viable Monell claim against the county where the plaintiff alleged that the county "was aware of unconstitutional actions by [police] officers directed towards members of the media but chose to ignore such behavior").

17

Case 3:16-cv-00016-GEC   Document 38   Filed 09/06/16   Page 17 of 18   Pageid#: 214

## Conclusion

For the reasons stated, Holmes' motion to dismiss will be granted in part and denied in part, and the County's motion to dismiss will be denied. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 6ᵗʰ day of September, 2016.

_____
Chief United States District Judge