CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

03/22/2018

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BIANCA JOHNSON AND DELMAR CANADA,<br><br>*Plaintiffs*,<br><br>v.<br><br>ANDREW HOLMES, *ET AL.*,<br><br>*Defendants*. | CASE NO. 3:16-cv-00016<br><br>MEMORANDUM OPINION AND ORDER<br><br>JUDGE NORMAN K. MOON |

This memorandum opinion and order sets out my reasons for granting judgment to the defendant at the close of plaintiffs' evidence in this selective enforcement case. I must consider the evidence in plaintiffs' favor and not make credibility determinations. *Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 332 (4th Cir. 2013). Dismissal is required if "a reasonable jury would not have a legally sufficient evidentiary basis" to find for plaintiffs. Fed. R. Civ. P. 50(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986).

As explained in my March 19th opinion, the law requires the plaintiffs to show Officer Holmes' actions had a "discriminatory effect." *Cent. Radio Co. Inc. v. City of Norfolk, Va.*, 811 F.3d 625, 634–35 (4th Cir. 2016); *Martin v. Stewart*, 499 F.3d 360, 366 (4th Cir. 2007); *United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016); *United States v. Mason*, 774 F.3d 824, 829 (4th Cir. 2014). That means they must identify an individual "similarly situated" to them but who was (1) a different race from them and (2) not subjected to the kind of treatment they were. *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 825 (4th Cir. 1995); *United States v. Mason*, 774 F.3d 824, 830, 834 (4th Cir. 2014); *Orgain v. City of Salisbury, Md.*, 305 F. App'x 90, 99–100 (4th Cir. 2008); *see United States v. Armstrong*, 517 U.S. 456, 465 (1996); *United States v.*

*Venable*, 666 F.3d 893, 900 (4th Cir. 2012); *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997). Further, binding case law states that someone is "similarly situated" when his or her "circumstances present no distinguishable legitimate enforcement factors that might justify making different enforcement decisions with respect to them." *United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016) (quoting *United States v. Venable*, 666 F.3d 893, 900–01 (4th Cir. 2012)); *see United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997); *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).

Both the Supreme Court and the Fourth Circuit have explained that the standard in these types of case is a "demanding" one. *Armstrong*, 517 U.S. at 465; *Mason*, 774 F.3d at 830. Proof of that is shown by the Fourth Circuit's statement in 2014 that it was unaware of "any cases at the Supreme Court or in this circuit where [a] violation for selective law enforcement has been found." *Mason*, 774 F.3d at 830.

After the close of plaintiffs' case, there was no legally sufficient evidentiary basis for the jury to find the above standards satisfied. Plaintiffs offered three arguments against this conclusion.

First, they asserted that they should not be held to the "similarly situated" requirement because it is "a standard of proof that's simply not possible." But the Supreme Court has already rejected this argument in the related context of selective prosecution claims.

> The Court of Appeals also expressed concern about the "evidentiary obstacles defendants face." But all of its sister Circuits that have confronted the issue have required that defendants produce some evidence of differential treatment of similarly situated members of other races or protected classes. In the present case, if the claim of selective prosecution were well founded, it should not have been an insuperable task to prove that persons of other races were being treated differently than respondents. For instance, respondents could have investigated whether similarly situated persons of other races were prosecuted by the State of California and were known to federal law enforcement officers, but were not prosecuted in federal court. We think the required threshold—a credible showing

of different treatment of similarly situated persons—adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution.

*United States v. Armstrong*, 517 U.S. 456, 470 (1996). What's more, I am simply not permitted to disregard the Fourth Circuit's decisions in *Hare*, *Mason*, *Sylvia Development*, *Orgain*, *Hastings*, and other cases that require proof of "similarly situated" individuals of another race in order to show the discriminatory effect element.

Second, the plaintiffs assert that statistics about Officer Holmes' arrests and citations create an inference of discriminatory effect because they show he arrests and cites black citizens more often than fellow officers and at a disproportionally higher rate than the population of black citizens in Albemarle County and in his patrol area. But I already ruled in my March 19th opinion that these statistics are inadmissible to prove discriminatory effect, based on Federal Rules of Evidence 401 and 403, as well as the lack of any expert testimony to explain the data. (Dkt. 84 at 7–13). I reaffirm and expressly incorporate that ruling into this opinion, which was consistent with the limiting instructions I gave the jury during testimony.[1]

---

[1] At oral argument on the Rule 50 motion, plaintiffs put a slightly different gloss on their position based on Holmes' trial testimony. They said that discriminatory effect is apparent because Holmes (1) testified he was especially interested in narcotics crime, yet (2) he stated that black citizens do not commit drugs crimes more often than any other race, but (3) the statistics show he still arrested and cited black citizens at a far greater rate, so therefore—the implication goes—(4) he *must* have been not taking law enforcement action against "similarly situated" citizens of a different race.

But nothing about the argument cures the deficiencies with the statistical evidence identified in my March 19th opinion. Indeed, it only highlights the fact that the statistics completely fail to account for the strictures of the "similarly situated" analysis—*i.e.*, that another citizen of a different race presented "no distinguishable legitimate law enforcement factors that might justify different enforcement decisions." The stats are broken down by arrests and citations, but the issue in this case is a search warrant. The stats do not break down by particular crime, but the search warrant in this case was for evidence underlying a driving suspended citation that plaintiff Canada denied receiving. And, as to premises (1) and (2) of plaintiffs' argument, the stats do not break down by particular *type* of drug crime, a significant point given that the Supreme Court has rejected the assumption that all races commit all crimes (and even all

– 3 –

Third and finally, plaintiffs pointed to Holmes' testimony that—despite issuing several dozen driving suspended citations over the years—this case was the first time he obtained a search warrant to find the suspension notice sent to the driver. In plaintiffs' view, this unprecedented decision shows discriminatory effect, but it does not.

Most centrally, plaintiffs adduced no evidence that other drivers who Holmes cited for driving suspended also *denied*—like plaintiff Canada—receiving a suspension notification. That denial is critical to determining whether those other drivers presented "no distinguishable legitimate enforcement factors that might justify making different enforcement decisions," *Hare*, 820 F.3d 99; *Venable*, 666 F.3d 900–01, like whether to obtain a search warrant of their house, because Virginia law requires proof that the driver receive notice of his suspension. *Johnson v. Holmes*, 204 F. Supp. 3d 880, 887 (W.D. Va. 2016); *Hodges v. Virginia*, 64 Va. App. 687, 692 (2015); *Carew v. Virginia*, 62 Va. App. 574, 577 (2013)). As Judge Conrad previously put it in this case:

> Because the Commonwealth must ultimately prove that a driver had received actual notice that his license had been suspended, it would not have been unreasonable for an officer to believe that the suspension notification form that Holmes sought to find at the plaintiffs' residence would aid in prosecuting Canada for driving on a suspended license. Not only would the plaintiffs possession of such evidence help to establish actual notice of the suspension, it might also prove helpful in impeaching Canada or rebutting any defense that he could raise at trial [on the driving suspended charge].

*Johnson*, 204 F. Supp. 3d at 888.

Put differently, because it was a legitimate law enforcement consideration for Holmes to search plaintiffs' home in hopes of finding the suspension notice, the plaintiffs must identify a

---

drug crimes) in equal proportion. *Armstrong*, 517 U.S. at 469–70 (citing statistics that 90% of crack cocaine convictions were of black citizens but over 90% of LSD dealers were white citizens). Simply put, a jury properly instructed on the meaning of the "similarly situated" requirement could not find a discriminatory effect from the statistics.

– 4 –

comparator of a *different* race who was in the proverbial same boat (*i.e.*, denied receiving a suspension notice) but against whom Holmes did *not* obtain and execute a search warrant. They have failed to do so and thus cannot establish the discriminatory effect element.²

\* \* \*

In sum, defendant's motion for judgment as a matter of law is **GRANTED**. Judgment will subsequently be entered.

It is so **ORDERED**.

Entered this 22nd day of March, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

² This is not to suggest that denial of the suspension notice is the only legitimate law enforcement consideration that would have to be (but has not been) part of the "similarly situated" analysis. For instance, Holmes knew that plaintiff Canada had a 2009 drug arrest and that Canada's name was familiar to the local drug task force, and an (admittedly unidentified) informant supposedly told Holmes that Canada sold drugs. It thus could have been a legitimate (*i.e.*, race-neutral) law enforcement consideration for Holmes to use the suspension notice search warrant as a pretext to look for evidence of drug crimes he thought might exist based on the facts he was aware of. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *Ashcroft v. al-Kidd*, 563 U.S. 731, 738–39 (2011); *United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir. 1998) ("That the Drug Task Force officer might have hoped to find evidence relating to cocaine trafficking is irrelevant to the Fourth Amendment analysis under *Whren*."). But plaintiffs have no evidence that Holmes suspected a citizen of a different race of drug activity but declined to obtain a search warrant against him or her.