Case 3:16-cv-00016-NKM-JCH Document 120 Filed 02/04/20 Page 1 of 4 Pageid#: 990

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
02/04/2020
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BIANCA JOHNSON, *et al.*, | |
| PLAINTIFFS, | Case No. 3:16–cv–00016 |
| v. | ORDER |
| ANDREW HOLMES, | Judge Norman K. Moon |
| DEFENDANT. | |
| RODNEY HUBBARD, *et al.*, | |
| PLAINTIFFS, | Case No. 3:16–cv–00018 |
| v. | ORDER |
| ANDREW HOLMES, | Judge Norman K. Moon |
| DEFENDANT. | |

These consolidated matters remain before this Court following the Fourth Circuit's remand for additional fact finding, *Johnson v. Holmes*, 782 F. App'x 269 (4th Cir. 2019), this Court's subsequent order inviting the parties to submit additional evidence and argument, Dkt. 110,[1] and the parties' filings submitted in response to this Court's order, Dkts. 111, 115, 117.

The Fourth Circuit remanded to this Court for additional fact finding on a discrete factual issue: Does the officer data produced by the Albemarle County Police Department ("ACPD") in the table marked Dkt. 49, Ex. 9 ("Comparator Table") represent citations (or "summonses") that

---

[1] In its order, this Court also inquired into whether the cases against the Defendant based on the same statistical evidence should continue to be stayed pending resolution of the two above-captioned matters. Dkt. 110 (addressing 3:16-cv-00017, 3:17-cv-00062, and 3:17-cv-00079). All parties agreed that the stay in these cases should remain in effect. Dkts. 112, 113.

1

were issued during *both* traffic stops and "calls for service,"[2] or those that were issued *only* during traffic stops. The Comparator Table ultimately bears on whether the data and other evidence on the record show—for the purposes of proving discriminatory effect under the Equal Protection Clause—whether Plaintiffs are similarly situated as a matter of law to the white drivers reflected in Plaintiffs' statistics, or whether there are distinguishable legitimate enforcement factors in the statistics and record evidence that justify the differing treatment between Plaintiffs and the white drivers.

To this end, the Fourth Circuit also stated that if Plaintiffs can show that their Freedom of Information Act ("FOIA") request sought only traffic stop data, this Court may presume that the data shown in the Comparator Table reflects only traffic stops. *Johnson*, 782 F. App'x at 284. Plaintiffs concede that their FOIA request was not limited to traffic stops. Dkt. 111 at 1. The context, however, indicates that the Comparator Table likely reflects only traffic stops.[3] In any event, given the significance the Fourth Circuit ascribed to this data, this Court will reopen discovery so that the parties can further develop the factual record on this issue. But ultimately, it is and remains incumbent on *Plaintiffs* to prove their case.

Additionally, in light of the standard announced by the Fourth Circuit in its opinion, the Court will also allow additional discovery on the issue of whether there are any "distinguishable legitimate enforcement factors" not yet in the record "that justify making different enforcement

---

[2] "A call for service is when an officer is dispatched to a certain location in response to an emergency or nonemergency police call." *Johnson*, 782 F. App'x at n.11.

[3] The Fourth Circuit similarly stated that "the titles and context of the charts provided by the county and proffered by the Appellants . . . indicate that these statistics refer to traffic stops and summonses." *Johnson*, 782 F. App'x at 282.

decisions between [Plaintiffs] and the white drivers reflected in the statistics." *Johnson*, 782 F. App'x at 281. Defendant states in his post-remand briefing that "Plaintiff should be required to … present evidence to the Court of a lack of distinguishable legitimate enforcement factors in the source documents. Otherwise, the Court will essentially shift the burden of proof in this case to the Defendant to show the existence of distinguishable legitimate enforcement factors." Dkt. 115 at 2. Whether the Fourth Circuit's remand actually contemplated a burden-shifting scheme or just the presentation of evidence on this issue to the jury is an issue not presently before this Court.[4] In any event, the Fourth Circuit's order did contemplate that legitimate enforcement factors will continue to be relevant on remand. In the interest of fairness, additional discovery will be allowed to provide Defendant with the opportunity to enter evidence of such distinguishable legitimate enforcement factors.

As a result of the foregoing, and finding good cause to do so, the Court hereby **ORDERS** that **DISCOVERY** be **REOPENED** for **SIXTY (60) DAYS** to gather evidence on the following discrete factual issues: 1) whether the Comparator Table reflects summonses issued during both traffic stops and calls for service, or just those issued during traffic stops[5]; and 2) whether there are "distinguishable legitimate enforcement factors" that justify making different enforcement

---

[4] The Fourth Circuit stated that "when a plaintiff offers statistical evidence to prove discriminatory effect in a selective enforcement case, a 'distinguishable legitimate enforcement factor' is one that is identifiable on the face of the statistics or made apparent from other evidence in the record." *Johnson*, 782 F. App'x at 280–81. Then, to oppose such evidence, "Holmes may raise his proposed enforcement factors, if true, before the jury to attack [Plaintiffs'] statistical evidence at trial." *Id*. at 281.

[5] Plaintiffs represented in their briefing on this matter that "[o]f course, the simplest method of getting at the truth is available from the Albemarle Police Department by running the inquiry again limited to traffic summonses." Dkt. 111 at 2. The Court therefore assumes that Plaintiff will not oppose reopening discovery.

decisions between Plaintiffs and the white drivers reflected in ACPD's statistics. U.S. Magistrate Judge Joel C. Hoppe shall oversee discovery on these limited issues.

The Court further **ORDERS** the parties to submit a joint status report within **THIRTY (30) DAYS** of the date of this Order concerning the status of any efforts by the parties to secure discovery including from third parties like ACPD. The hearing presently scheduled for 11 a.m. on March 9, 2020 is hereby **CANCELLED**.

It is so **ORDERED**.

The Clerk of Court is requested to send a copy of this Order to counsel for the parties.

Entered this 4th day of February, 2020.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE