**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **BIANCA JOHNSON, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Case No. 3:16-cv-00016** |
| | : | |
| | : | |
| **ANDREW HOLMES,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **RODNEY HUBBARD, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW HOLMES** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF THE ADMISSIBILITY**
**OF THE COMPARATOR CHART**

**INTRODUCTION**

The question to be addressed is whether the Comparator Table (Dkt. 49, Ex. 9) reflects summonses issued during both traffic stops and calls for service, or just those issued during traffic stops. (Dkt. 120)  In addition, the parties are to address whether there are "distinguishable

legitimate enforcement factors" that justify making different enforcement decisions between Plaintiffs and the white drivers reflected in ACPD's statistics. *Id*.  After initial briefing, this Court reopened discovery to address these issues.

## STATEMENT OF FACTS

To start, plaintiff served a subpoena on the Albemarle County Police Department (ACPD), seeking, *inter alia*,

> (1) "[a] list of aggregate traffic summonses, broken down by race, issued by all officers worked Sectors 1 and 2in 2015, except Andrew Holmes, and (2) [a]ll documents which reflect whether the designation of 'citations' at the top of Exhibit A refers to traffic summonses or includes other summonses as well. If it includes other summonses, provide a breakdown of other summonses issued by the officers (other than Andrew Holmes) in Sectors 1 and 2 in 2015.

(Ex. 1).  Albemarle County claimed that it had no documents responsive to that request and objected to "creating documents in response to the subpoena." *Id.*  In a letter to the Court thereafter, defendant's counsel (who was also representing the County) represented that "the Department will review all traffic summonses with the time frame and hand sort them based on sector." (Dkt. 123). To plaintiff's knowledge that has not been done.  Plaintiff then deposed the two people most likely to know the answer to the question.

Unfortunately, discovery did not provide a direct answer.  Neither Captain Darrell Byers, who was the liaison between defense counsel and the ACPD, nor Jennifer Zawitz, the crime analyst who prepared the Comparator Table, have a record of what the request entailed, or what was produced, nor any independent recollection of either.

Captain Byers was the liaison between the attorney for Mr. Holmes and the police department for the purpose of collecting documents. (Ex. 2, Byers Dep. at 5:24-6:3).  He passed

on counsel's requests orally to the department's then crime analyst, Jennifer Zawitz. (Ex. 2, Byers Dep. at 11:19-12:8).  Ms. Zawitz, who is no longer with the police department, has no recollection of who asked her to prepare the documents in this case (Ex. 3, Zawitz Dep. at 7:23-25), what she was asked to produce (*Id.* at 11:24-12:1, nor what the Comparator Table represents. *(Id.* at 11:3-14).   Captain Byers also has no record of what was requested or what was produced and no independent recollection. (Ex. 2, Byers Dep. at 12:21-13:4).

Captain Byers stated that he made the Comparator Table request based on #2 in Plaintiff's Second Request for Production of Documents. (Ex. 5).  Plaintiff's request was for:

> All documents that identify ACPD officers assigned to patrol the same District and sector as Officer Holmes between 2009 and 2016 and for each, set forth the number of traffic stops per year, the number of summonses issued per year and the number of arrests per year, all broken down by sex, race and reason for summons or arrest.

(Ex. 6).  Defendant objected to responding and ultimately it was agreed that defendant would provide a table of the traffic summonses other officers who worked police Sectors 1 and 2.  *See* Declaration of Jeffrey E. Fogel ¶¶3,4.  According to defense counsel, "we can determine who worked the . . . day that [Holmes] was off, we could produce some statistics for the same shift in the same sector within a week or so of statistics from Officer Holmes." (Ex. 6).  Included was a proposed format. *Id.*

On the same day that she prepared the Comparator Table, Ms. Zawitz sent an email to Captain Byers, attaching a replacement page regarding a data request for ACPD Sectors 1 and 2 and referencing "Traffic Stops by Specified Officer." (Exhibit 7). @@.

At oral argument before the Fourth Circuit, "Holmes' counsel seemed to acknowledge that Appellants had requested only traffic summonses from Albemarle County not at all

summonses." *Johnson v. Holmes*, No. 18-1454 at 20 n.12 (4th Cir. 2019)(According to Holmes'

counsel "[Appellant's counsel] never asked for a breakdown of the summonses as to what they

were for. *It was just simply traffic summonses*.")(emphasis supplied by court).  Finally, Mr.

Guynn has represented to this Court that "the Department thinks the citations on the exhibit are

for traffic offenses . . ." (Dkt. 115 at 2).

**ARGUMENT**

I. **THE COMPARATOR TABLE, THE CHART OF "CITATIONS BY SPECIFIED OFFICER," REFLECTS TRAFFIC SUMMONSES AND NOT ALL SUMMONSES**.

 Unfortunately, there is no paper trail of what was asked of the crime analyst and what

was produced. Nor do the principals have a recollection of either. Captain Byers stated that his

request was based on Plaintiff's Second Request for Production of Documents as set forth above,

but clearly the Comparator Table is not responsive to that request. *Compare* Ex. 5 with Ex. 8.  In

fact, the request to produce the Comparator Table was the result of negotiations and it was

designed provide the statistics necessary to compare Defendant Holmes' record of traffic

summonses with that of other officers who also worked in Sectors 1 and 2 during the same

period of time.

As a result of defendant's objections, several discussions were had about limiting the

scope of the request. Fogel Declaration, ¶4.  Plaintiff's counsel advised defendant's counsel that

he wanted to compare Defendant Holmes' record of traffic summonses, which had already been

provided, with the record of other officers who worked Sectors 1 and 2 during the same time

period. *Id*. at ¶3.  Mr. Guynn agreed to "provide numbers/statistics that are fair and meaningful

comparators."

4

The format of the Comparator Table was virtually the same as that of Defendant Holmes (*see* Ex. 9), even though Holmes' name does not appear at the top of his chart.  Moreover, his chart, which reflects traffic summonses (*Johnson, supra*. at 28), simply says summonses and not *traffic* summonses just as with the Comparator Table.  Plaintiff had never been provided with a chart of all of Defendant Holmes' summonses for the year 2015, just traffic summonses.  Thus, a chart of *all* summonses by "other officers" would not be a "fair and meaningful comparator" Each of these items confirm that the negotiated request for documents included a chart of *traffic* summonses, broken down by race, of officers, other than Holmes, who worked Sectors 1 and 2 in the relevant time period.

## II.     THERE ARE NO DISTINGUISHABLE LEGITIMATE ENFORCEMENT FACTORS.

Defendant has asserted that there were at least five factors that would constitute distinguishable legitimate enforcement factors.  The Fourth Circuit rejected each, noting that a "'distinguishable legitimate enforcement factor' is one that is identifiable on the face of the statistics or made apparent from other evidence in the record." *Johnson, supra.* at 24. Nothing is apparent from the face of the statistics and there is no other evidence in the record to support defendant's position.  Indeed, in the Order of 2/4/2020 (Dkt. 120), additional discovery was permitted "to provide Defendant with the opportunity to enter evidence of such distinguishable legitimate enforcement factors." No discovery was sought by defendant on the issue.  As the Fourth Circuit pointed out, "Holmes is in the best position to know whether his proposed enforcement factors are true" (*Johnson*, *supra*. at 23), yet he fails to do so.

5

## CONCLUSION

For the foregoing reasons, as well as those set forth in plaintiff's initial Memo (Dkt. 111), the Court should determine that the Comparator Table contains only traffic summonses and can be compared to the chart of Defendant Holmes' traffic summonses.

Respectfully submitted,
Bianca Johnson, Delmar Canada,
Rodney Hubbard and Savannah Hubbard

By Counsel

   /s
Jeffrey E. Fogel
913 E. Jefferson Street
Charlottesville, VA 22902
(434) 984-0300
jeff.fogel@gmail.com

CERTIFICATE OF SERVICE

I certify that on December 21, 2020, the within Memo with attached exhibits and Declaration of Jeffrey E. Fogel have been served on defendant by filing the same with the Court's ECF system which will give notice to all attorneys of record.

   s/
Jeffrey E. Fogel