# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BIANCA JOHNSON, *et al.*, | |
| *Plaintiffs*, | **LEAD CASE NO. 3:16-cv-00016** |
| v. | |
| ANDREW HOLMES, | |
| *Defendant.* | |
| LEON POLK, *et al.*, | |
| *Plaintiffs*, | |
| v. | CASE NO. 3:16-cv-00017 |
| ANDREW HOLMES, | |
| *Defendant.* | |
| RODNEY HUBBARD, *et al.*, | |
| *Plaintiffs*, | |
| v. | CASE NO. 3:16-cv-00018 |
| ANDREW HOLMES, | |
| *Defendant.* | |
| CORY GRADY, | |
| *Plaintiff*, | |
| v. | CASE NO. 3:17-cv-00062 |
| ANDREW HOLMES, | |
| *Defendant.* | |
| SERGIO HARRIS, | |
| *Plaintiff*, | |
| v. | CASE NO. 3:17-cv-00079 |
| ANDREW HOLMES, *et al.*, | |
| *Defendants.* | |

1

**Memorandum Opinion & Order Denying Plaintiffs' Motion to Exclude**

Plaintiffs have brought these consolidated cases alleging claims of selective enforcement of the laws and racial profiling primarily by Defendant Officer Holmes, in violation of the Equal Protection Clause of the Fourteenth Amendment. In anticipation of trial, Plaintiffs have filed a motion in *limine* seeking to exclude Defendants' expert testimony from Dr. Michael Moore. In support of their motion, Plaintiffs argue that Dr. Moore's anticipated expert testimony conflicts with the Fourth Circuit's (and this Court's) prior holdings in this case. Plaintiffs further contend that there is no record evidence to support Dr. Moore's opinions.

The Fourth Circuit held that Defendants' proposed enforcement factors did not prevent Plaintiffs' statistical evidence from comparing "apples to apples" as a matter of law, and that this Court had erred in its exclusion of Plaintiffs' statistical evidence. That opinion, however, did not preclude Defendants from trying at trial to substantiate legitimate enforcement factors defending against Plaintiffs' claims—indeed, the Fourth Circuit expressly acknowledged Defendants could try to do so. At this point and on this record, the Court has little reason to believe that Dr. Moore will attempt to testify contrary to the legal principles articulated by the Fourth Circuit's decision. If he should try to, Plaintiffs will be able to object at that time. The Court will allow Defendants' expert testimony, subject to traditional means of challenging such testimony, including cross-examination and presentation of contrary evidence.

<u>Applicable Law</u>

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

2

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under Rule 702 and pursuant to the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 789 (1993), the district courts have a "gatekeeping role" so that they may exclude unreliable expert testimony from the jury's consideration.[1] These principles apply to all proposed expert witnesses with specialized knowledge, not just those based on scientific knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Expert testimony is admissible under Rule 702 "if it involves specialized knowledge that will assist the trier of fact in understanding the evidence or determining a fact in issue, and is both reliable and relevant." *United States v. Young*, 916 F.3d 368, 379 (4th Cir. 2019) (citing *Daubert*, 509 U.S. at 889–92). There is no requirement that the party seeking to introduce expert testimony "'prove' anything to the court before the testimony in question can be admitted," although, "[a]s in all questions of admissibility, the proffering party must come forward with evidence from which the court can determine that the proffered testimony is properly admissible." *Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998).[2]

---

[1] *See also* Fed. R. Evid. 702 advisory committee's note (2000 amends.) (explaining that the Rule 702 amendment "affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony").

[2] *See also* Fed. R. Evid. 702 advisory committee's note (2000 amends.) (explaining that "the admissibility of all expert testimony is governed by the principles of Rule 104(a)," and that, "[u]nder that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence").

When considering a challenge to the reliability of expert testimony, courts must consider the following *Daubert* factors:

(1) whether a theory or technique can be or has been tested;

(2) whether it has been subjected to peer review and publication;

(3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and

(4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 480–81 (4th Cir. 2018) (quoting *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592–94)).

District courts must be mindful of "two guiding, sometimes competing, principles" when considering whether to allow expert testimony. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). First, "Rule 702 was intended to liberalize the introduction of relevant expert evidence." *Id.* However, courts also must be cognizant that "[b]ecause expert witnesses have the potential to be both powerful and quite misleading," testimony that "has a greater potential to mislead than to enlighten should be excluded." *Id.*

A district court's gatekeeping role "is not intended to serve as a replacement for the adversary system," and therefore "the rejection of expert testimony is the exception rather than the rule." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019) (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No. II)*, 892 F.3d 624, 631 (4th Cir. 2018)) (cleaned up); *see also* Fed. R. Evid. 702 advisory committee's note (2000 amends.) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.").

4

<u>Issues & Reasoning</u>

1.  *Whether Dr. Moore's Testimony Conflicts with Fourth Circuit's Decision*

Plaintiffs argue that Dr. Moore's proposed testimony "conflicts with the holding of this Court and that of the Fourth Circuit in this case." Dkt. 190 at 1. Plaintiffs assert that the Fourth Circuit held that "if the chart of 'other' officers reflected only traffic summonses, which it did, plaintiffs had established their 'similarly situated' required as a matter of law." *Id.* Thus, Plaintiffs contend that the Fourth Circuit had "rejected [Defendants'] claim that [P]laintiffs failed to eliminate *possible* 'enforcement factors' that could have affected [P]laintiffs' statistics as speculative and lacking any factual basis in the record." *Id.* at 1–2. Plaintiffs acknowledge that the Fourth Circuit held that Defendants "would be permitted to adduce facts in support of those enforcement arguments at trial," but argue that Defendants lack such evidence. *Id.* at 2. Plaintiffs primarily challenge the following aspect of Dr. Moore's anticipated testimony:

> 13.    Plaintiffs at several points compare Mr. Holmes' citation rates for %Black and %White to population percentages. The results are statements of the form "the probability someone is black and is cited is higher than the probability someone is drawn from the relevant population, while the opposite is true for whites."
>
> 14.    ***Comparisons of this form are flawed as evidence of discriminatory conduct (intent or impact).*** They assume, first and foremost, that rates of criminal behavior are proportional to population averages, which they need not be. They fail to recognize the probability someone is black, given that they are cited, has the causal statement backwards. The correct statement examines the probability someone is cited, given that they are black, and compares it to the same conditional probability for whites. These latter two probabilities are not the same thing as the first. Because the statements have the test backwards, and because there might be competing determinants of citation rates, the analysis must be redesigned so that the control group is 'observationally equivalent'" ….

Dkt. 190-1 at 3–4 (¶¶ 13–14) (emphases added); *see also* Dkt. 190 at 2 (Pls' brief, challenging emphasized part of anticipated testimony).

Plaintiffs argue that such testimony would constitute "a direct refutation of the holding of this Court that the statistical comparisons introduced by plaintiffs (along with their testimony) were admissible to prove discriminatory intent … and the holding of the Fourth Circuit that those same statistics were also effective evidence of discriminatory effect." Dkt. 190 at 2. Therefore, Plaintiffs conclude that such testimony should be excluded because "[a]n expert cannot dispute a legal ruling of a court …." *Id.*[3]

To be sure, Dr. Moore's testimony may not appropriately contradict the underlying legal principles articulated by the Fourth Circuit (and this Court) that govern Plaintiffs' claims—which would not be testimony helpful to a jury. *See* Fed. R. Evid. 702(a) (an expert may testify if his "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"); Fed. R. Evid. 702 advisory committee's note (2000 amends.) (explaining that the Rule 702 amendment "affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony"). But it is not clear that Dr. Moore's challenged testimony is such a "refutation" of the Fourth Circuit's holding, as Plaintiffs posit. The Fourth Circuit held that this Court's prior decision had "improperly defined 'distinguishable legitimate enforcement factors,'" which

---

[3] The Court can quickly dispense with Defendants' first counterargument: that the Fourth Circuit's holding in *Johnson v. Holmes*, 782 F. App'x 269 (4th Cir. 2019), "does not preclude Dr. Moore's opinions," because the decision was unpublished and thus "not binding precedent in the cases of Polk, Cook , Grady, and Harris against Holmes." Dkt. 207 at 3. Defendants raised this argument in a motion for summary judgment, which this Court denied. *See* Dkt. 213. So too here. Although the Fourth Circuit's opinion was unpublished, this Court will follow that decision in these cases, which were "all stayed pending the outcome of *Johnson v. Holmes* as lead case and [ ] since have been consolidated therewith." *Id.* at 2. This Court also considers it especially appropriate to follow the Fourth Circuit decision in all these cases, in view of the near identity of issues presented, and the fact that they will require consideration of the same statistical evidence about the same defendant (Holmes) as was at issue in that decision. *Id.*

should simply mean those enforcement factors that were "identifiable or discernable from the statistics themselves or other evidence in the record." *Johnson*, 782 F. App'x at 280. The Fourth Circuit considered that "any possible differentiating feature" in statistics, "even if not supported by the evidence," would not qualify as a "legitimate enforcement factor." *Id.* And the Fourth Circuit further held that Plaintiffs' statistics should not have been excluded as a matter of law, on the then-existing record, based on Defendants' "entirely speculative proposed factors," which "do not constitute 'distinguishable legitimate enforcement factors,'" and which "cannot justify excluding [Plaintiffs'] statistical evidence from proving discriminatory effect." *Id.* However, the Fourth Circuit also explained that "Holmes may raise his proposed enforcement factors, if true, before the jury to attack [Plaintiffs'] statistical evidence." *Id.* at 281. In other words, Plaintiffs' statistical proof need not be "completely unassailable factually and as a matter of law to even submit it to a jury." *Id.*

Accordingly, Defendants are entitled to try to put forward "proposed enforcement factors, if true, before a jury to attack [Plaintiffs'] statistical evidence at trial." *Id.* In that light, there is little indication that Dr. Moore would attempt to go beyond testifying in his expert opinion about what Plaintiffs' statistics show or do not show, or whether any enforcement factors identifiable from the statistics themselves or in other record evidence would undermine either the utility or the persuasiveness of Plaintiffs' statistical evidence. There is no indication Dr. Moore would attempt to testify, for example, that statistics *cannot* be used to prove discriminatory effect, *but see Johnson*, 782 F. App'x at 277 ("[t]he law has repeatedly recognized that statistics can be used to prove discriminatory effect"); or that statistical evidence is insufficient as a matter of law if Defendants can point to "any possible differentiating feature" in the statistics, "even if not supported by the evidence," *id.* at 280 (interpreting "distinguishable legitimate enforcement

factors" to mean "an enforcement factor that was identifiable or discernable from the statistics themselves or other evidence in the record"). And, as explained in the Court's opinion on the matter also issued this day, Plaintiffs' expert would be able to offer contrary testimony about what in her view the statistics do show—that Holmes gave a statistically higher number of citations to Black drivers, and that the likelihood of that occurring solely by chance was very small. And Plaintiffs will be able to challenge Dr. Moore's testimony during cross. If Dr. Moore should attempt to testify in a manner that conflicts with any governing rule of law stated by the Fourth Circuit or this Court, Plaintiff may object at that point.

2.   *Whether Dr. Moore's Opinion is Supported by Record Evidence*

Plaintiffs also argue that Dr. Moore's opinions should be excluded on the basis that they are not supported by record evidence. *See* Dkt. 190 at 2–4. Notably, Plaintiffs challenge Dr. Moore's anticipated testimony that Plaintiffs' statistics have failed to rule out other, "multiple *potential* explanations for observed differences," between the rates of citations Holmes' gave Black drivers and others in the Department. *Id.* at 2–3 (Plaintiffs' emphasis). Plaintiffs also argue that Dr. Moore's decision to exclude from his calculations those officers who worked fewer than 199 hours in Sectors 1 and 2 was a decision that informed his opinion that was unsupported by any record evidence. *Id.* at 2 (arguing that "Dr. Moore's speculation is just that, speculation."). Similarly, Plaintiffs argue that Dr. Moore's opinion that only those officers who work in the evening should "should be included in the calculations" was also speculative and only based on information from Lt. Miller. *Id.* at 4.

The Court considers Plaintiffs' argument (which effectively challenges the foundation of Defendants' expert's conclusions) to be, in this case, most effectively addressed at trial after affording Defendants the opportunity to lay the foundation for any of these conclusions about

which their expert will testify. Again, Defendants are entitled to try to put forward "proposed enforcement factors, if true, before a jury to attack [Plaintiffs'] statistical evidence at trial." *Johnson*, 782 F. App'x at 281. That could be done by introduction of record evidence and expert evidence. Of course, the Court must ensure that an expert's testimony rests on a reliable foundation. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (Rule 702 "imposes a special gatekeeping obligation on the trial judge to ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand" (cleaned up, citation omitted)). "An expert may rely on inadmissible evidence, including hearsay." *United States v. Smith*, 919 F.3d 825, 838 n.9 (4th Cir. 2019).

Applying these principles, and cognizant that "the rejection of expert testimony is the exception rather than the rule," *In re Lipitor*, 892 F.3d at 6313, the Court concludes that the appropriate course is not for the Court to exclude Defendants' expert's opinion because Plaintiffs argue that Dr. Moore may testify in a manner that conflicts with governing law, or may testify on an issue without proper foundation. Rather, the Court will afford Defendants the opportunity to introduce record evidence and to lay the foundation for their expert opinions. And if, prior to introduction of Dr. Moore's expert's opinions, Plaintiffs consider that no such foundation has been laid for the expert to offer such opinion, Plaintiffs may object at that time. So too may Plaintiffs raise any objection to any opinion stated that they believe is contrary to governing law. And, of course, Plaintiffs' counsel will be afforded the regular means of challenging such expert testimony, as by cross-examination and the ability to present contrary evidence. *See Daubert*, 509 U.S. at 596 (citing the "traditional and appropriate means" of challenging expert testimony, including by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof").

<u>Conclusion</u>

Accordingly, Plaintiffs' motion to exclude Defendants' expert Dr. Moore's testimony hereby is **DENIED**, *without prejudice* to Plaintiffs' ability to raise any objection as to improper testimony at trial. Dkt. 189.

It is so **ORDERED**.

The Clerk of Court is directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record.

Entered this  23rd  day of August, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE