IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| BIANCA JOHNSON, et al., | : | |
| Plaintiffs, | : | |
| | : | Case No. 3:16-cv-00016 |
| v. | : | |
| | : | |
| ANDREW HOLMES, | : | |
| Defendant. | : | |

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**Proposed Finding of Fact:**

1. On Wednesday, September 7, just before trial, plaintiffs' counsel was informed that the defendant was interested in discussing settlement and a phone call with the magistrate judge and the attorneys was scheduled for Thursday, September 8.

2. On Wednesday evening a zoom call was initiated by counsel with all of the plaintiffs (except Mrs. Hubbard who did not have an internet connection and with whom he communicated by phone) to advise them of this new initiative just days before trial and to see where people stood on settlement. It was clear to counsel that the amount being demanded by two of the plaintiffs, Rodney Hubbard and Sergio Harris, would make settlement impossible, especially since plaintiffs all agreed at the time of consolidation of the cases, that any gross settlement would be equally divided.

3. The next day, counsel received two emails from plaintiff Malcolm Cook stating that he "just talked to both of them (Mr. Harris and Mr. Hubbard) . . . [and] they both said that if they can get a check for [X] and your fee already taken out, leaving them [X] even they will take it." Exhibit 1(a). *See also* Exhibit 1(b)("I spoke with two of the individuals this morning and they stated that they will take [X] each person and walk away. That's the low end they stated they will take.").

4. Counsel advised all the plaintiffs of the first offer made by defendant on Thursday morning and that "based on what I heard from Malcolm, I have made a counter offer of . . . ." Exhibit 2.

5. Counsel then contacted each of the plaintiffs other than Hubbard and Harris, advised them of their options in light of the position of Hubbard and Harris that they would not take less than X. One alternative was if these plaintiffs would reduce their share of a settlement so that Hubbard and Harris could get X. Exhibit 7. All agreed.

6. Counsel emailed Mr. Hubbard on Friday, September 9 at 12:18 that he was still working on the settlement, including his demand of X. Exhibit 3. Mr. Hubbard responded at 12:25 acknowledging that counsel would be meeting to discuss settlement. Exhibit 4.

7. Later that day, after continuing negotiations, an amount was agreed upon as a global settlement. That settlement was predicated on the notion that Hubbard and Harris would get X as they demanded and that the other plaintiffs would receive a lesser amount. Non-monetary issues were resolved early Saturday morning.

8. Friday evening, Mr. Hubbard emailed counsel asking if the amount for which we settled would have fees added or deducted. Exhibit 5(a). Counsel responded by stating "You are getting your X clear. Others, as you know, have agreed to less in order to settle the case." Exhibit 5(b).

9. It was not until Saturday, after settlement was reached, that Mr. Hubbard stated that he would not agree and set forth an outrageous demand more than five times the amount that the defendant refused to respond to in our earlier mediation.

**Proposed Conclusions of Law:**

1. Settlement will be enforced if counsel had either express or apparent authority. *Moore v. Beaufort County, N.C*, 936 F.2d 159, 163-64 (4th Cir. 1991)(finding that the attorney had both actual and apparent authority).

2. The law presumes that attorneys have authority to settle cases and the burden of establishing otherwise rests on the party opposing enforcement. *Moore v. Beaufort County, N.C.*, *supra.* at 163-64 (citing *Mid-South Towing Co. V. Har-Win*, 733 F.2d 386, 390 (5th Cir. 1984)("an attorney of record is presumed to have authority to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon affirmative proof of the party seeking to vacate the judgment that the attorney had no right to consent to its entry.")

3. The attorney in this case had both actual and apparent authority to settle the matter.

4. Mr. Hubbard was aware that counsel was negotiating a settlement even before the negotiations began. He then told plaintiff Malcolm Cook that he would accept X as his bottom line and Mr. Cook so informed counsel. Mr. Hubbard knew that counsel made a

counter offer based on what Mr. Cook had told him. Counsel then informed Mr. Hubbard that he was still negotiating a settlement that would get X for Mr. Hubbard. Mr. Hubbard never communicated to counsel that he would not accept X. This course of conduct constitutes actual authority and Mr. Hubbard is estopped from denying otherwise.

5. Counsel also had apparent authority. He was the only person conducting negotiations and the plaintiffs appearance at the court ordered mediation session did not mean that all plaintiffs would thereafter participate in all negotiations. Mr. Guynn never dealt with anyone other than counsel in any aspect of the case, including settlement negotiations, both court ordered as well as those that are the subject of this motion. It was reasonable for him to presume that counsel had authority, especially since he knew that the plaintiffs had consulted with their counsel during the negotiations. The magistrate judge who participated in all of the negotiations also proceeded on that assumption based on his knowledge of the participants from the previous mediation session.

## CERTIFICATION OF SERVICE

I hereby certify that the above Proposed Findings of Fact and Conclusions of Law has been served on all parties by filing this document on December 16, 2022 with the court's ECF system which will give notice to all counsel of record.

s/_____<br>
Jeffrey E. Fogel